## Ellis *versus* Guggenheim.

20 　　287
29 SC ¹560

1. In an action by a female on a promise of marriage, the plaintiff is bound to prove not only a promise on the part of the defendant, but also a promise on her part.

2. In an action on a promise of marriage, after the mutual promises or contract of marriage was established, it was not material that the Court erred in admitting subsidiary proof of the contract from the same witness.

3. The answer of the plaintiff, when informed by one who had been the confidant and messenger of the defendant, of his intention to marry her, was evidence on her part as part of the *res gestæ*.

4. A witness offered to prove the contents of lost letters, was objected to generally, and was admitted. Her testimony stating the general purport of the letters was not open to exception in this Court on the ground of insufficiency, no objection having been taken on the trial to the matter of the testimony.

5. Testimony is not liable to objection in this Court *as hearsay*, which does not on its face appear to be so, the witness having been asked for her knowledge on the subject, and the answer being general, the source of her information, whether from the defendant or otherwise, not having been asked.

ERROR to the District Court, *Philadelphia.*

This was an action to March Term, 1851, by Fanny Guggenheim *v.* Joseph D. Ellis, for breach of a promise of marriage. One of the pleas was *non assumpsit,* with leave, &c. The case was tried before STROUD, J.

On the trial it was proved, on the part of the plaintiff, that the defendant had paid attentions to the plaintiff, and wrote letters to her.

Emily Rosenbaum testified that Ellis often talked to her, and said he loved Fanny; that one night in her presence, the defendant swore to Fanny, the plaintiff, that he would never marry any other girl than her; and that Fanny said, "I won't swear," &c., "but I promise you I will never marry any other man, but will wait for you."

The witness was asked, "When Ellis told you that he had told Fanny he would marry her, and you told that to Fanny, what did Fanny say?" The answer was objected to on part of defendant, but it was admitted, and the witness replied that Fanny said "she knew it already, and would stay until he was able to support her."

The same witness was asked whether she knew that the plaintiff had other opportunities of marriage. The question was objected to; the objection was overruled, and the witness testified that she knew that the plaintiff had other opportunities of marriage.

This was the subject of the *second* assignment of error.

The plaintiff herself was called, and, under objection, testified that certain letters written by the defendant to her had been stolen from her trunk.

Emily Rosenbaum was again called to prove the contents of the

[Ellis *v.* Guggenheim.]

letters; objection was made, but it was overruled. The witness testified, "I read these letters; there was nothing in the letters but love; the last words were, yours for ever, until death. He also wrote that she should wait until he was able; he would marry her; she must have patience."

This was the subject of the *fourth* assignment of error.

Another witness testified as to the value of the property of defendant; *also that defendant had said, several times, that he would marry the plaintiff.* He also proved the handwriting of defendant in two letters by him to the plaintiff.

It was stated in one of the letters by defendant, dated May 17, 1850, that he had been married about six months.

No evidence was offered on part of defendant.

The Court, *inter alia,* charged the jury that they should take into consideration the condition of the parties in life, and the means of the defendant.

November 12, 1851, verdict for plaintiff for $1500.

Error was assigned to the admission of the declarations of the *plaintiff* as made in the absence of the defendant.　2. In allowing the testimony as to the plaintiff having had other opportunities of marriage.　3. In allowing the plaintiff to prove that the letters from defendant were stolen.　4. In allowing the contents of such letters to be given in evidence.

*H. M. Phillips* and *Ludlow,* for plaintiff in error.—As to the *first* assignment, it was alleged that the testimony objected to was hearsay: 1 *Greenleaf* 112; 1 *Philips' Ev.* 229.　As to the *third,* it was alleged that the proof as to search was deficient: 2 *Starkie Ev.* 343; 3 *W. & Ser.* 291; 9 *Barr* 28.　As to the fourth assignment, it was contended that the witness, in testifying to the contents of lost papers, should be able to speak clearly and pointedly to the contents: 2 *Mason Rep.* 468; 1 *Peters* 591–600; 9 *Wheaton* 597.　An extract from a letter is not evidence, though the witness be ready to testify that there was nothing in the letter relative to the business in question which was not contained in the abstract: 6 *Ser. & R.* 420.　In the present case the testimony of the witness was of a general character.

*J. A. Phillips* and *Parsons,* for defendant in error.—As to the *first* error, was cited *Greenleaf Ev.* 108–109; 8 *Barr* 79.　The reply of the plaintiff was admissible as evidence of the marriage contract—as a part of the transaction.　It was proper for her to prove her assent: 1 *Harris* 331, Moritz v. Melhorn.

As to the second error, the evidence was admissible as bearing on the question of damages: 3 *Esp.* 119; 2 *Starkie* 1308–9; 3 *Pa. Rep.* 49.

[Ellis *v.* Guggenheim.]

As to the third error. The testimony as to loss was sufficient to admit evidence as to the contents: 1 *Caine's Cases in Error* 28; 18 *Johns.* 73; 6 *Watts* 164; 7 *Peters* 100; 6 *Bin.* 63.

As to the fourth assignment. The *substance* of the letters was proved: 1 *Peters* 600; 9 *Wheaton* 581.

The opinion of the Court was delivered January 31, by

WOODWARD, J.—In an action by a woman for breach of a marriage contract, she is bound to prove not only a promise on the part of the defendant, but a promise on her own part. If there be not mutual promises, the contract is void for want of consideration. What declarations and circumstances are sufficient grounds for presuming mutual promises, need not be considered in this case, for the plaintiff here proved not only attentions bestowed and received, such as usually indicate a promise of marriage, but the very words of the contract itself. To Langsdorf and to Einstein, the defendant repeatedly expressed his intention to marry Fanny. Emily Rosenbaum describes a scene between the parties, when Ellis declared to Fanny, "I swear to you, and God is my witness, I will never marry any other girl but you." To which solemn vow Fanny, with less emphasis, replied, "I won't swear, because we don't know what might happen; but I promise you I will never marry any other man, but will wait for you."

Here were mutual promises much more distinctly proved than is usual in actions of this sort. Of what moment is it then that the Court may have erred in admitting subsidiary proof of the contract from the same witness?

But an examination of the bills of exception will show there is no error in them.

The first relates to Fanny's answer when Emily Rosenbaum communicated to her Ellis's intention to marry her. Fanny's answer was evidence on the same principle a letter from her to Ellis would have been. It was part of the *res gestæ.* The witness was the friend and confidant of Ellis, and had been his messenger to carry his letters. Whether she was sent to make this communication or not, it was authorized by what he is proved to have said on various occasions. If the plaintiff's response were not evidence, it is difficult to see how a woman is ever to prove her acceptance of an overture of marriage. When she makes an express promise in reply to that of her suitor, she has a right to prove it. It is not evidence manufactured for an occasion by herself, but a declaration drawn out by him; the benefit of which he cannot take from her when he chooses to violate his own solemn engagements.

The third and fourth errors assigned relate to the proof of the contents of the lost letters.

The plaintiff was a competent witness to prove the loss; and when she swore that they were stolen, they were lost to all intents

[Ellis *v.* Guggenheim.]

and purposes. Then says the bill, "the counsel for plaintiff offered to prove by this witness (Emily Rosenbaum), the contents of letters; objected to, and objection overruled by the Court." By the expression "*contents of letters*," we must intend *the* letters which were proved to have been stolen. The objection then, on the face of the bill, was to Miss Rosenbaum as a witness to prove the contents, and nothing more. To the *matter* of her testimony, there was no exception, and no prayer to the Court for direction in regard to it. For myself, I greatly doubt whether her compendious criticism that "there was nothing in the letters but love," could be regarded as proof of contents. Doubtless she so interpreted them, but she was called to furnish, not a construction or interpretation of the letters, but the *contents* themselves. The contents proved, the jury were the interpreters. The argument was on the insufficiency of this evidence, but the bill does not raise this question. Had it done so, however, and had the plaintiff in error convinced us that it was error to admit such evidence of the contents of the lost letters, it would have been no cause for reversal, since the evidence tended only to prove the contract, which was fully established by unexceptionable testimony from the same witness.

The second error assigned relates to evidence which tended rather to aggravate damages, than to make out the contract. The objection to it is, that it was hearsay. It does not appear to be so on the face of it. The witness was asked for her knowledge in the premises, and she answered according to her knowledge. She did not reveal the source of her information, because she was not asked. Why should we presume it was hearsay? Langsdorf's testimony to the same point was not hearsay. And Emily may have been present at interviews between Fanny and other suitors, as she certainly was present at one between her and the defendant. Or she may have derived her information from the defendant himself. A cross-examination would have developed the character of her information; but this, for some reason, was withheld. So far as appears from the record, the evidence was properly admitted.

The judgment is affirmed.